Thank you, Florence Brummer on behalf of Rosenquist & Associates, from Phoenix, Arizona, representing Lawrence Jackson. We were not trial counsel. Undoubtedly, this is a very emotional and tragic case. No one, including the jury, would like to hear the details of a brutally murdered person. As you know, the victim had begged for his life and the circumstances were very tragic. However, the defendant in this case received a wrongful conviction. The three issues in the case, one being the insufficiency of evidence, two being ineffective assistance to counsel, and then three being a sentence in error, issues one and two are intertwined. Throughout my argument, I believe the issues will overlap. First of all, regarding the insufficiency of evidence, we have a case where there was two supposedly eyewitness testimonies. They're eyewitness witnesses. Their testimony was very problematic and their stories were very different, number one being Vanessa Cross. This was a woman who said that during the day that the victim died, she was drunk, she was doing drugs, she was using crack cocaine, methamphetamine. It's something that she regularly uses. She was drinking 40-ounce malt liquors, and she is the witness who brings up the testimony about that Battle Dome corner. If you recall, Your Honors, that testimony, this was elicited on cross-examination, the term Battle Dome was not mentioned by Ms. Cross until two weeks before the trial. And the other supposedly eyewitness, Raymond Jackson, says he never heard that term before. This was a theme that was used throughout the trial for the government to say that Mr. Jackson was guilty. Ms. Cross also says that no one is afraid of Lawrence Jackson except for her. She's so afraid that she doesn't leave. She continues to live with him. And I'm being sarcastic when I'm saying she's so afraid. She continues to live with him after the murders. She has her children in the house with him. After, while the body's being disposed, she goes to sleep. She's very incredible. But isn't that for the jury to resolve? It was, Your Honor. Was all of this pointed out? All of this was pointed out, but because of the ineffective assistance of counsel, it was skewed. And, for instance, we have the problem with the 404B evidence. I'm going to skip to ineffective assistance of counsel for a moment. Usually, and I know the panel is going to ask me this, why is this ineffective assistance of counsel claim being brought in a direct appeal? Well, we can bring it in a direct appeal if the evidence shows that he was ineffective during the trial, that the counsel was ineffective during the trial. And we have that. And the very biggest circumstance is the 404B evidence. The counsel's ---- Because we don't have a record that would enable us to pass an ineffective assistance. We only have one fragment of the record, which you're telling us about the trial. We don't have counsel's side. No, we don't have counsel's side. You don't have an explanation why he took the trial. Well, there's not going to be an explanation. I can tell you why. It doesn't ---- making a ---- calling it a tactical decision won't make any sense because the first thing counsel does is file a 404B motion, says don't have this evidence about the Antonio Jackson beating. Then he withdraws it, which is ---- that part's not so bad. But then we get to Vanessa Cross' examination. And during her examination, counsel opens the door to the 404B evidence. It was not brought up by the government during Vanessa Cross' direct examination. So we didn't have to have that Antonio Jackson evidence there. He brings it up in such a way that it's ---- instead of having her explain what was going on, because as I thought about it, I thought there is a tactical reason to bring forth the 404B evidence, which is to say this beating occurred with Antonio Jackson and Antonio Jackson has let go. Well, if he's cross-examining Vanessa Cross, that should be coming out as the story, everything that happened with Antonio Jackson. Instead, he makes a very, very small question to her, and then the government says during their redirect, okay, we're going to go into everything that has to do with the Antonio Jackson matter. The defense ---- and you can tell it's not a tactical decision because the defense counsel objects. And the court says, you opened the door to this, so she gets to do the evidence during the redirect. She gets to ask the questions during the redirect. Opposing counsel is flabbergasted and said, well, I want a chance to do redirect on that. The court says, you don't get to redirect the redirect. That's it. You've opened the door. That's it. So during redirect, the government goes into the whole examination with Vanessa Cross, brings out this whole thing with Antonio Jackson. It's very prejudicial to the client and not done in a way that would be tactical for the case. So then the only way to fix it is to call the defendant as a witness and have him talk about it. By then, it looks to the jury as if it was something that was trying to be hidden, and then now it's discovered by the government. If it's going to be tactical, it's going to come out. Or if it's not going to come out, it's either in one or the other. And what the defense counsel does is sort of kind of bring it in, so the government's able to bring it in with a big bang and severely prejudice the defendant. The two witnesses in this case, the two eyewitnesses that the government relies on, their testimony contradicts each other and is really problematic, and they both have reasons to testify, which is to save themselves. Raymond Jackson's testimony is very important. And first going back to Vanessa Cross, she never testifies that she sees, she never sees defendant in the bathroom where the victim was stabbed. She never sees defendant with a gun or knife, and the government's theory is that he was, that Lawrence Jackson beat the victim with a gun. She never sees the defendant hit the victim with the gun, and she also vaguely remembers stuff from that day because she's so drunk. Then we have Raymond Jackson, who is testifying because he is there with that testimony, which allows him to be charged as a juvenile, so he'll be out of prison in three to four years. I think he was 16 or 17 when it happened. He gets released when he's 21. Both Vanessa Cross and Raymond Jackson admit that they lied initially to the police two or three times, and then when they get to trial, we're telling the truth, we're truthful. Raymond Jackson is also not credible as well because he says, I am so fearful of this defendant. He is so fearful, and again, sarcasm, he hides the body in the desert, and the defendant's not even with him. There was testimony in this, and I know the court is thinking, well, the jury was there to decide. This again goes back to the ineffective assistance of counsel, that the defendant during his sentencing stated that the investigation was not done in his case. During his own testimony, the defendant's own testimony, he stated that there was witnesses that could have been called to support his case. That was not done.  Thank you. May I reserve the rest for rebuttal? Certainly. Good morning. Mike Morrissey on behalf of the government. The first issue raised the sufficiency of the evidence. The defense focuses on inconsistencies between Vanessa Cross and Raymond Jackson. The government also, at page 10 of its brief, lays out those inconsistencies. First, I would note that those inconsistencies were generally minor as to, for example, whether or not the victim had swung once at the defendant before the slaughter began. They simply observed different portions of many of the events. And notably, in closing instructions, the court said at page 58, the standard instruction to the jury, you may believe part, you may believe all of what a witness says. So under the standard that this court reviews this matter with all the inferences in the government's favor, there is no question that a rational jury could have found guilt beyond a reasonable doubt. I would also note that it's just simply not correct to say that all the government had was Cross, who had credibility problems, and Raymond Jackson, who, as the defense did a very competent job of pointing out, received a deal. If he'd been prosecuted as an adult, he could have been facing life. As a juvenile, he got a four-year sentence. The other evidence involved Dawn Dixon, the person, the ex-girlfriend of Raymond Jackson, that the defendant went to and threatened and said, if you talk, I'll harm your children and make you watch. In other words, consciousness of guilt evidence. You also had the physical evidence on the 9-millimeter gun. So the idea that this was the government would be entitled to prevail, even if it was just a straight credibility determination for the jury to resolve. But the fact was the government did have much more evidence than that and sufficient evidence. The murder actually took place in the bathroom, didn't it? He was stabbed in the bathtub and drowned, I guess. I can't quite agree with that, Your Honor, and let me say why. Because the medical examiner said that he would have died from both blunt force trauma, which likely occurred in the living room, and from the stab wounds, which occurred in the bathroom. So there were alternative theories of how the victim died. Certainly, the over 100 stab wounds in the bathroom were fatal. But nobody observed those, right? There was no witness in the bathroom? Actually, Judge Raymond Jackson testified to witnessing. He was in the bathroom, and he testified to witnessing both the defendant and Mr. Smith, the co-defendant who pled prior to trial, witnessing both of them, stabbed them. There were two different knives used. So that's why there was sufficiency of evidence, even if you were just to focus on the stab wounds as the cause of death. No, his plea deal, and I need to point out what's not correct, the defense in its brief says that Smith, at his change of plea, which took place about four days before trial, took sole responsibility. And as the government points out in its brief, that's just not an accurate rendition of either his factual basis or what he said at his change of plea. What he said was, myself and a group of others killed the victim. Now, let me turn to the alleged ineffective assistance of counsel. First, I should note, it is the government's position that this is not a developed record for this court to deal with this on direct review. It would be useful and interesting to the court to have an affidavit from defense counsel as to certain strategy decisions. However, if this court does want to address it at this point, I should note that it's absolutely clear that there was a defense strategy. As the defense said in its opening, that the jury was going to hear some very bad things about the defendant. Defense previewed this in its opening. And in its closing, and this is at SDR 66 and 68, it said, speaking about the defendant, why he would testify. Now, he didn't have to testify. He had a right not to testify, but he got up on the witness stand and he told you, and now I'm no longer quoting all these bad things, he did that. He told you he beat up Antonio Jackson. The entire thrust of the defense of this case was, I've made all of these admissions. That's what the defendant was saying. And so you should believe me when I don't admit to something. And the defendant's argument was that he wins the credibility determination between himself and Vanessa Cross and Raymond Jackson. And that is clearly a strategic decision that counsel had. I should note, for example, why would defense counsel bring up or why would he allow a defendant to testify from the witness stand that the defendant possessed drugs and sold them after getting out of prison? And the answer is because that supported the defendant's alibi that he had gone to Daniel's house that night and had left the night the victim was murdered so that he could smoke weed. Why would the defense counsel allow the defendant to testify that he possessed multiple 9mm guns, which is not evidence of a law-abiding person who's been in prison? And the answer is because that makes it much more likely that the gun used in the murder may have been his but was not in his possession and was used in his absence. So there's no question that damaging information came out about the defendant, but that was clearly part of a definite strategy to portray the defendant as coming from a difficult environment and having been the best person from a difficult environment, a person that the jury should believe. The defense counsel, it would be useful to know whether or not the defendant absolutely insisted on testifying because a review of this record shows that no matter how persuasive the defendant may have thought he was going to be, he likely hurt himself greatly with his own testimony. He had a lousy alibi. He had difficulty explaining many things, including why he would be threatening other witnesses, including Raymond Jackson. The gun evidence, which had the blood of the victim on it, and he acknowledged, well, that that is essentially the gun that I've had. All of those factors are what is likely what led to his conviction. But, again, this is best addressed in a habeas proceeding at this point. I do need to say, however, that there was absolutely no failure to identify witnesses, keeping in mind that Smith could not testify because he had a Fifth Amendment right. McGeough was under indictment. She couldn't testify. DeLow had been charged by complaint four days prior to the trial. She was not available to testify. And none of that mattered anyway because the defendant's claim was, I simply wasn't there. And so the crucial witness to hear from was the defendant. It's clear from the record, and the defendant said in his own testimony to his alibi witness, Daniel, I gave all of that information to my defense counsel, but he couldn't find him because Daniel is on the run from the police. And this Daniel, the alibi witness, was somebody that the defendant could not name his wife, couldn't say where he lived, he just said he lived in a barn somewhere. It was just inherently incredible. So the idea that the defendant himself admitted there was no way to find Daniel, so Daniel couldn't have been produced for trial. There was no witness that the defense counsel failed to produce who could have helped defendant or exculpated him. And so the argument that there was a failure to call witnesses and a failure to investigate this case is simply not accurate. The government, for the sentencing aspect of this, will rely on its arguments made in the briefs. If there are no further questions at this point, the government believes its case is well stated. Thank you, counsel. Ms. Brummer, do you have a response? Just briefly, Dawn Dixon does not tie the defendant to the murder. She does state that she was threatened, but the defendant did not go to her and say, go say something because I killed the victim. She was the girlfriend of Raymond Jackson, so there is a likelihood that she was going to be saying something to protect her boyfriend, and her boyfriend was the main prosecution witness. Smith, in this case, too, I think is important because he does a change of plea, and he just says group, but he doesn't ever identify Lawrence Jackson. So although there's other individuals supposedly there, no one identifies Lawrence Jackson except the two men. I didn't understand the government to be arguing that Smith had identified him. I thought the government's response about Smith was that his plea did not accept sole responsibility for the murder. Exactly, but he says group. He doesn't individually name anyone. And it's only Raymond Jackson and Vanessa Cross who get Vanessa Cross who nothing happens to her, Raymond Jackson who gets the best deal, who identify. If there's no more questions, I'll submit on the brief. Okay. Thank you, counsel. I thank all counsel, and the Court will stand in recess until tomorrow morning. Is this part of the session? Okay. Thank you.  Yeah. Okay. Thank you.
judges: Noonan, Bybee, Schwarzer